**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ROGER STOKES,

                                 Plaintiff,

        v.                                                    No. 03-CV-1402
                                                                 (LEK/DRH)
GLENN S. GOORD, Commissioner; DONALD
SELSKY, Director Special Housing; ROY A.
GIRDICH, Superintendent; MR. D.
McCOMSEY, Correctional Officer; MR. T.
RABIDEAU, Correctional Officer; MR.
B. HEBERT, Correctional Officer; MR. W.
COMSTOCK, Correctional Officer; MR. D.
ABAIR, Correctional Officer; WM. PARMER,
Nurse Practioner; MS. A. TOUSIGNANT,
Nurse Administrator; MRS. E. WEISMAN,
Doctor; MS. L. RILEY, Nurse; J. SPINNER,
C.O.; and A. BOUCHEY,

                                 Defendants.

_____

**APPEARANCES:**                          **OF COUNSEL:**

ROGER STOKES
No. 89-A-3433
Plaintiff Pro Se
Upstate Correctional Facility
Post Office Box 2001
309 Bare Hill Road
Malone, New York 12953

HON. ANDREW M. CUOMO                JEFFREY P. MANS, ESQ.
Attorney General for the                    Assistant Attorney General
     State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER** [1]

Plaintiff pro se Roger Stokes ("Stokes"), an inmate in the custody of the New York

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42

U.S.C. § 1983 alleging that defendants, fourteen DOCS employees, violated his

constitutional rights under the First and Eighth Amendments.  Am. Compl. (Docket No. 7). [2]

Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P.

56.  Docket No. 79.  Stokes opposes the motion.  Docket No. 81, 83-84.  For the following

reasons, it is recommended that defendants' motion be granted and that Stokes be given

**THIRTY (30)** days to amend his complaint.


**I. Background**

The facts are presented in the light most favorable to Stokes as the non-moving

party. See Ertman v. United States, 165 F.3d 204, 206 (2d Cir. 1999).

At all relevant times, Stokes was incarcerated at Upstate Correctional Facility

("Upstate") in the Special Housing Unit ("SHU"). [3]  See Am. Compl. at ¶ 5; Stokes Dep.

---

[1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] Liberally construed, Stokes alleges that McComsey filed a false misbehavior
report against him. Am. Compl. at ¶ 23.  However, Stokes' contention that this constitutes
a constitutional claim must fail because he does not challenge the disciplinary hearing
itself and the mere allegation that a misbehavior report was false without a challenge to
the due process of the subsequent disciplinary hearing fails to state a claim.  See Boddie
v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997); Freeman v. Rideout, 808 F.2d 949, 951
(2d Cir. 1986); Jenner v. Curtin, 979 F. Supp. 153, 154 (N.D.N.Y. 1997).  Accordingly, any
claim against McComsey on this ground should be dismissed.

[3] SHUs exist in all maximum and certain medium security facilities.  The units
"consist of single-occupancy cells grouped so as to provide separation from the general
population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2006). Inmates are

(Docket No. 79, Mans Aff., Ex. A) at 14-15.  Stokes contends that defendants were deliberately indifferent to his serious medical needs because they, inter alia, failed to provide him with proper medical care on March 17, 2003 after a use of force incident, denied him the results of his medical tests, and failed properly to diagnose a lump under his arm.  Am. Compl. at ¶¶ 81, 84-91, 108-09.  Stokes also contends that on numerous occasions, defendants served him food that was, inter alia, spoiled, stale, contaminated, re-heated, and inadequate.  See id. at  ¶¶ 11-15, 17-21, 24-25, 29-39, 41-44, 46-51, 55, 60-62, 64-66, 69-74, 76-78, 92-95, 102, 105.  Finally, Stokes contends that defendants retaliated against him for asserting his legal rights and also denied him access to the courts. See id. at ¶¶ 99, 104, 107.

## II. Discussion

Stokes asserts three causes of action against all defendants.  The first alleges that defendants provided him contaminated and inadequate food in violation of the Eighth Amendment.  The second alleges that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  The third alleges that defendants retaliated against him for asserting his legal rights and blocked his access to the courts in violation of the First Amendment.  Defendants seek summary judgment on all claims.

---

confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

**A. Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).  When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

4

## B. Eighth Amendment

### 1. Medical Care

Stokes contends that defendants were deliberately indifferent to his serious medical needs.

A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  More than negligence is required "but less than conduct undertaken for the very purpose of causing harm."  Hathaway, 37 F.3d at 66.  The test is twofold.  First, the prisoner must show that there was a sufficiently serious medical need.  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer v. Brennan, 511 U.S. 825, 844 (1994).

### a. Serious Medical Need

A serious medical need is "'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'"  Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)).  An impairment that a reasonable doctor or patient would find important and worthy to treat, a medical condition

that affects the daily activities of an individual, or the existence of chronic and substantial pain are all factors that are relevant in the consideration of whether a medical condition was serious.  Chance, 143 F.3d at 702-03.

Here, Stokes contends that as a result of defendants' deliberate indifference, he suffers from, inter alia, chest and lower back pain, constipation, lack of energy, diarrhea, staph infections, blurry vision, and painful lumps on his arms.  See Am. Compl. at ¶ 110. Although these conditions may cause Stokes discomfort, none of these conditions are serious enough to establish the first prong of the test.  See Ross v. McGinnis, No. Civ. 00-275E (SR), 2004 WL 1125177, at *10 (W.D.N.Y. Mar. 29, 2004) (holding that complaints of abdominal pain, vomiting, heartburn, constipation, and extreme body heat do not constitute a serious medical need); see also Thomas v. Nassau County Corr. Ctr., 288 F. Supp. 2d 333, 338-39 (E.D.N.Y. 2003) (citing cases).  However, even if Stokes' conditions are considered serious, his Eighth Amendment claim fails to demonstrate that defendants were deliberately indifferent.  ___

### b. Deliberate Indifference

Deliberate indifference requires the prisoner to prove that the prison official knew of and disregarded the prisoner's serious medical needs.  Id. at 702.  Mere disagreement over proper treatment does not create a constitutional claim as long as the treatment was adequate.  Id. at 703.  Allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness.  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

Stokes contends that defendants failed to diagnose a lump under his left arm, denied him the results of a Barium Swallow test, failed to provide any treatment for his pain after the March 17, 2003 use of force incident, and provided him with nasal spray instead of antibiotics.  See Am. Compl. at ¶¶ 81, 84-91, 96, 98, 108-09.  However, the medical records clearly indicate that Stokes received adequate treatment in each situation.  Regarding the lump under his arm, Stokes was examined by Dr. Weissman and it was concluded that Stokes had a tiny cyst which did not present any signs of infection or inflamation.  See Docket No. 80, Ex. B at 2/11/04; see also Weissman Aff. (Docket No. 79) at ¶ 4.  Dr. Weissman recommended that Stokes continue to observe the cyst and alert medical staff if it changed in any way.  Id.

As for Stokes' treatment after the use of force incident, Nurse Riley observed that Stokes had a small abrasion and a three inch scrape on his right arm.  Docket No. 80, Ex. B. at 3/17/03.  After cleaning the wound with soap and water, Riley gave Stokes Ibuprofen for the pain.  Id.  Subsequently, the Upstate medical staff continued to provide Stokes with Ibuprofen and also noted that he did not appear to be in any distress and could ambulate without difficulty.  See Id. at 3/19/03-3/30/03; see also Riley Aff. (Docket No. 79) at ¶ 6.  Regarding defendants' alleged failure to provide Stokes with the results of his Barium Swallow test, the medical records indicate that Stokes was in fact provided with the test results, which were normal.  Docket No. 80, Ex. B at 2/5/04; see also Weissman Aff. at ¶ 5.

Finally, with regard to defendants' providing Stokes with nasal spray instead of the antibiotics he requested, this contention amounts to nothing more than a mere disagreement over treatment and does not give rise to an Eighth Amendment violation.

7

Chance, 143 F.3d at 703; see also Weissman Aff. at ¶ 8. Thus, in light of defendants' documentary evidence to the contrary, Stokes' conclusory allegations that defendants' denied him proper medical treatment fail to raise a genuine issue of material fact as to defendants' deliberate indifference. See Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir. 1996) ("mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment").

Therefore, it is recommended that defendants' motion on this ground be granted.

## 2. Cruel and Unusual Punishment

Stokes contends that on numerous occasions, defendants' served him "contaminated and inadequate food" in violation of the Eighth Amendment prohibition against cruel and unusual punishment. Stokes also contends that defendants failed to serve him a lunch or dinner meal on March 17, 2003.

In order to prove that a prison condition amounted to cruel and unusual punishment, a plaintiff must satisfy both an objective and a subjective standard. Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996). To satisfy the objective test, a plaintiff must show that the conditions of his confinement resulted "'in unquestioned and serious deprivations of basic human needs.'" Anderson v. Coughlin, 757 F.2d 33, 35 (2d Cir. 1985) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). To satisfy the subjective test, a plaintiff must show that the defendants were deliberately indifferent to plaintiff's health or safety. See Jolly, 76 F.3d at 480. With regard to inmate nutrition, the Eighth Amendment requires that inmates "be served 'nutritionally adequate food that is prepared and served under conditions which

8

do not present an immediate danger to the health and well being of the inmates who consume it.'" Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (quoting Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980)); see also Midalgo v. Bass, No. Civ. 03-1128 (NAM/RFT), 2006 WL 2795332, at *11 (N.D.N.Y. Sept. 26, 2006).

Here, Stokes contends that defendants served him food that was, inter alia, stale, contaminated, rotten, spoiled, and re-heated.  See Am. Compl. at ¶¶ 11-15, 17-21, 24-25, 29-39, 41-44, 46-51, 55, 60-62, 64-66, 69-74, 76-78, 92-95, 102, 105.  However, although Stokes contends that defendants delivered him the food, he fails to allege that he saw any of them actually contaminate or tamper with his food.  See Livingston v. Goord, 225 F. Supp. 2d 321, 332 (W.D.N.Y. 2002) ("even assuming that the food was contaminated by someone, it would be . . . speculative to conclude that . . . defendants were the culprits simply because they delivered plaintiff's food to him"), overruled on other grounds, Livingston v. Piskor, 153 Fed.Appx. 769 (2d Cir. Oct. 26, 2005); see also Midalgo, 2006 WL 2795332, at *11-12.  Further, Stokes filed various grievances complaining about the quality of the food, but the complaints were found to be without merit.  See Haug Aff. (Docket No. 79) at ¶ 7 & Ex. A.  Moreover, although Stokes makes general allegations regarding the health effects he suffered because of the alleged contaminated and inadequate food, there is nothing in his medical records to indicate that he suffered any adverse health effects from the food served to him by defendants.  See Cooper v. Bowles, No. Civ. 91-2622, 1997 WL 361879, at *2 (N.D. Tex. June 20, 1997) (holding that plaintiff failed to state an Eighth Amendment claim where, although he identified various ailments resulting from the alleged

food tampering by prison officials, he failed "to provide any factual support to demonstrate that food tampering actually occurred").

Stokes also contends that he was denied both a lunch and dinner meal on March 17, 2003.  See Am. Compl. at ¶¶ 82-83.  Although defendants do not dispute this claim, they contend that Stokes was denied the two meals because of his refusal to comply with a back-of-cell order following a use of force incident earlier that day.  See McComsey Aff. (Docket No. 79) at ¶ 8 & Ex. A; Abair Aff. (Docket No. 79) at ¶ 8 & Exs. A-B; Mans Aff., Ex. A at 94-97.  Although depriving an inmate of food is a disfavored punishment, Moss v. Ward, 450 F. Supp. 591, 596 (W.D.N.Y. 1978), depriving Stokes of two meals appears to be warranted because of his failure to comply with the direct orders of DOCS staff. See Moss, 450 F. Supp. at 596 ("being deprived of one or two meals might not be cruel and unusual punishment"); see also Warren v. Irvin, 985 F. Supp. 350, 356-57 (W.D.N.Y. 1997). Moreover, Stokes' health records from March 17 and the following days fails to demonstrate that he was suffering any adverse health effects from the denial of the two meals.  See Docket No. 80, Ex. B at 3/17/03-3/21/03.  Thus, under the circumstances, these deprivations are not sufficiently serious to constitute cruel and unusual punishment under the Eight Amendment.

Therefore, it is recommended that defendants' motion on this ground be granted.

## C. First Amendment

### 1. Retaliation

Stokes contends that he was placed on Central Monitoring Case status ("CMC")[4] in retaliation for "asserting [his] legal rights."  Am. Compl. at ¶ 104.

In order to prevail on a retaliation claim, a plaintiff must first assert that his conduct was constitutionally protected and that this conduct was a "substantial factor" that caused the adverse action against plaintiff.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  The burden then shifts to the defendant to show that by a preponderance of the evidence, the adverse action would have resulted even in the absence of the protected conduct.  Id.; see also Dawes v. Walker, 239 F.3d 489, 492 (2d. Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema, 534 U.S. 506 (2002). Retaliation claims are actionable because the conduct may tend to chill an individual's exercise of constitutional rights. Dawes, 239 F.3d at 491.  However, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters. Id.

Liberally construed, Stokes' amended complaint alleges that defendants retaliated against him after he asserted his legal right to file lawsuits and grievances.  The filing of a lawsuit or grievance is clearly an assertion of a constitutional right protected by the First Amendment.  Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996).  Stokes claims that the

---

[4] "CMC status indicates that an inmate requires close supervision; it does not preclude an inmate's transfer to any facility or assignment to any program, but it does require that any transfer be reviewed and approved by the DOCS Inspector General." Rivera v. Senkowski, 62 F.3d 80, 82 (2d Cir. 1995).

adverse action which resulted from this conduct was his being placed on CMC status.  To constitute adverse action, a plaintiff must establish that the action would deter a similarly situated individual from exercising his or her constitutional rights. Dawes, 239 F.3d at 491. It is reasonably possible that other inmates would fail to exercise their constitutional right to file lawsuits and grievances for fear that they would be placed on CMC status.  Thus, Stokes' allegations regarding defendants' conduct at least present questions of fact as to whether these actions could constitute adverse action.  However, Stokes fails to show a causal connection between his filing of grievances and lawsuits and defendants' alleged adverse action.[5]  Thus, because Stokes offers only conclusory evidence to support his claim, he has failed to demonstrate a causal connection between the constitutionally protected conduct and the alleged adverse actions.  See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983); see also Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003).

Therefore, it is recommended that defendants' motion for summary judgment as to Stokes' retaliation claim be granted.


## 2. Access to Courts

Liberally construed, Stokes' amended complaint asserts a claim for denial of access to the courts.

All persons have a constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 350 (1996); Monsky v. Moraghan, 127 F.3d 243, 246 (2d Cir. 1997).  To establish

---

[5] In fact, Stokes was placed on CMC status in 1999 after a failed escape attempt. See Mans. Aff., Ex. D.

a violation of the right of access to the courts, a prisoner must demonstrate that his or her efforts to pursue a legal claim were impeded.  Lewis, 518 U.S. at 351; Bourdon v. Loughren, 386 F.3d 88, 92-93 (2d Cir. 2004).  A plaintiff must demonstrate not only that a defendant's conduct was deliberate and malicious but also that this conduct caused an actual injury such as the "dismissal of an otherwise meritorious legal claim."  Cancel v. Goord, No. Civ. 00-2042 (LMM), 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (citing Lewis, 518 U.S. at 351).

Here, Stokes contends that he gave McComsey a "two-page handwritten grievance which never reached the grievance office."  Am. Compl. at ¶ 99.  Stokes also contends that an amended complaint addressed to the Northern District of New York was picked up in the morning but returned to him that night and thus interfered with his "timely access to the court."  Id. at ¶ 107.  However, Stokes fails to allege any actual injury from these alleged incidents, much less that McComsey's or any other defendant's conduct was "deliberate and malicious."  Thus, Stokes has no viable claim on this ground.

Therefore, it is recommended that defendants' motion on this ground be granted.


**D. Qualified Immunity**

Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10,

13

2003).  A court must first determine that if plaintiff's allegations are accepted as true, there

would be a constitutional violation. Only if there is a constitutional violation does a court

proceed to determine whether the constitutional rights were clearly established at the time

of the alleged violation. <u>Aiken</u>, 236 F. Supp. 2d at 230.  Here, the second prong of the

inquiry need not be reached because, as discussed <u>supra</u>, accepting all of Stokes'

allegations as true, he has not shown that defendants violated his constitutional rights.

Therefore, in the alternative, it is recommended that defendants' motion on this

ground be granted.[6]

### III. Other Causes of Action

Liberally construed, Stokes' amended complaint asserts claims for excessive force

and failure to intervene in violation of the Eighth Amendment.  <u>See</u> Am. Compl. at ¶ 80; <u>see</u>

<u>also</u> <u>Triestman</u>, 470 F.3d at 474-75 ("It is well established that the submissions of a pro se

litigant must be construed liberally and interpreted to raise the strongest arguments that

they suggest") (internal quotations and citations omitted).

The Supreme Court has established that inmates enjoy the Eighth Amendment

protection against the use of excessive force and may recover damages for its violation

under 42 U.S.C. § 1983.  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9-10 (1992).  The Eighth

Amendment's prohibition against cruel and unusual punishment precludes the

---

[6] Defendants Goord, Gidrich, Selsky, and Tousignant also contend that a civil rights action cannot be brought under the theory of respondent superior.  Defs. Mem. of Law (Docket No. 79) at 21-22.  However, it is recommended herein that all of Stokes' claims should be dismissed on other grounds.  Thus, there is no need address this argument.

"unnecessary and wanton infliction of pain."  Gregg v. Georgia, 428 U.S. 153, 173 (1976);

Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000).  To bring a claim of excessive force under the

Eighth Amendment, a plaintiff must establish both objective and subjective elements.

Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).  The objective element requires a

showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment

protection."  Id.  However, "the malicious use of force to cause harm constitute[s] [an]

Eighth Amendment violation *per se*" regardless of the seriousness of the injuries.  Id. at 263

(citing Hudson, 503 U.S. at 9).   "The Eighth Amendment's prohibition of 'cruel and unusual'

punishments necessarily excludes from constitutional recognition de minimis uses of

physical force, provided that the use of force is not of a sort repugnant to the conscience of

mankind."  Hudson, 503 U.S. at 9-10 (citations omitted).   "'Not every push or shove, even if

it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's

constitutional rights.'"  Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of

culpability, shown by actions characterized by wantonness."  Id. at 21 (citation omitted).

The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Id. (quoting

Hudson, 503 U.S. at 7).

Here, Stokes alleges that on March 17, 2003, Lt. Mr. R. Wright gave orders to

corrections officer Mr. R. Richards to strike Stokes "about the right lower forearm."  Am.

Compl. at ¶ 80.  Stokes then alleges that he was struck more than fifteen times on his

forearm.  Id.  Further, Stokes alleges that he was struck repeatedly in the presence of

"several more correctional officers" and Lt. Wright and, thus, Stokes appears to allege that their refusal to stop the assault constitutes a claim for failure to intervene.[7]  However, because Wright and Richards were not named as defendants in Stokes' amended complaint, this court does not have jurisdiction over these individuals.

Therefore, it is recommended that Stokes be granted thirty (30) days from the date of the district court's decision on this motion to file an amended complaint alleging excessive force and failure to intervene in violation of the Eighth Amendment.

## IV.  Conclusion[8]

_____For the reasons stated above, it is hereby

**RECOMMENDED** that:

1. Defendants' motion for summary judgment (Docket No. 79) be **GRANTED**;

2. This action therefore be **TERMINATED** in its entirety as to all named defendants and all claims; and

3. Stokes be granted **THIRTY (30) DAYS** from the date of the district court's decision on this motion to file an amended complaint alleging excessive force and failure to intervene in violation of the Eighth Amendment.

---

[7] "When a supervising corrections officer purposefully fails to intervene, and exposes an inmate to a substantial risk of serious harm, that failure to intervene may evidence deliberate indifference to the inmate's safety, in violation of the Eighth Amendment." Edmonds v. Greiner, No. Civ. 99-1681 (KNF), 2002 WL 368446, at *7 (S.D.N.Y. Mar. 7, 2002) (citing Fischl v. Armstrong, 128 F.3d 50, 55 (2d Cir. 1997)).

[8] Defendants also argue that Stokes failed to exhaust his claim against McComsey for failure to serve him a meal on March 17, 2003.  See Defs. Mem. of Law at 23. However, as discussed supra, Stokes' claim is without merit.  Thus, there is no need to address defendants' exhaustion argument.

16

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  February 21, 2007
       Albany, New York

_____
United States Magistrate Judge