**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ROGER STOKES,

                              Plaintiff,

        v.                                                              No. 03-CV-1402
                                                                        (GTS/DRH)

GLENN S. GOORD, Commissioner; DONALD
SELSKY, Director Special Housing; ROY A.
GIRDICH, Superintendent;[1] MR. D. McCOMSEY,
Correctional Officer; ROGER W. WRIGHT,
Lieutenant; R. RICHARDS, Correctional
Officer; and R. KRAMER, Sergeant,

                              Defendants.

_____

**APPEARANCES:**                          **OF COUNSEL:**

ROGER STOKES
89-A-3433
Upstate Correctional Facility
Post Office Box 2001
309 Bare Hill Road
Malone, New York 12953

HON. ANDREW M. CUOMO                    CHRISTOPHER W. HALL, ESQ.
Attorney General for the                Assistant Attorney General
    State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

_____

[1]Goord, Selsky, and Girdich were named as defendants in plaintiff's first amended
complaint. Docket No. 7. In an order filed March 2, 2007, these defendants were
dismissed from the action, but plaintiff was granted leave to file a second amended
complaint. Docket No. 89. The second amended complaint was filed and again named
these three defendants. Docket No. 91. The docket of this case is incorrect, therefore,
where it indicates in its caption that the case has been terminated as to Goord, Selsky,
and Girdich and the Clerk is directed to correct that error.

**REPORT-RECOMMENDATION AND ORDER**[2]

Plaintiff pro se Roger Stokes ("Stokes"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, seven DOCS employees, violated his constitutional rights under the Eighth Amendment.  Second Am. Compl. (Docket No. 91).  Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 120.[3]  Stokes opposes the motion.  Docket No. 125.  For the following reasons, it is recommended that defendants' motion be granted and it is further recommended that the second amended complaint be dismissed without prejudice as to defendant Roger W. Wright.

## I. Background

The facts are related herein in the light most favorable to Stokes as the non-moving party.  See subsection II(A) infra.  The facts and procedural history of this case are set forth in the Report-Recommendation and Order filed July 21, 2007, familiarity with which is assumed.  See Docket Nos. 85, 89.  As relevant here, Stokes alleges in his second amended complaint that on March 17, 2003 at Upstate Correctional Facility, defendant

---

[2]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[3]The motion is made on behalf of all remaining defendants except Roger W. Wright.  See Docket Nos. 101, 113, 116, 120.  Wright has neither been served with process or otherwise appeared in the action.  See section III infra.

McComsey provided Stokes with a dirty coffee cup,[4] Stokes extended his arm through a slot in the door and threw the cup on the floor, and Stokes refused to withdraw his arm until he was able to speak with a sergeant.  Second Am. Compl.  In response, defendant Wright ordered defendant Richards to strike Stokes to force Stokes to withdraw his arm from the opening, Stokes was struck repeatedly on the forearm, defendant Kramer was present but failed to intervene to stop the assault, and defendants Goord, Selsky, and Girdich were notified of the matter on numerous occasions but failed to act.  Id.

Stokes contends that all defendants were personally involved or aware in advance of the abuse he was to sustain.  During his deposition, Stokes testified that he wrote two letters to Goord.  Stokes Dep. (Docket No. 120-4-5) at 9.  The first letter, written in April 2002, received no response.  Id. at 10.  Stokes then resent the letter, receiving a response from Goord's subordinate.  Id. at 10, 21, 24.  These letters were written almost one year before the alleged assault occurred, concerned Stokes' allegations of receiving tampered food, and never mentioning fears of excessive force or abuse.  Id. at 22, 29-30; Docket No. 125 ¶ 29.  The subordinate's response stated that he "could find no merit to [Stokes'] complaint."  Stokes Dep. at 24.

Stokes sent the second letter to Goord in December 2002 reiterating concerns he had stated in the April 2002 letter and requesting transfer.  Id. at 26.  Selsky responded to the letter on Goord's behalf.  Id.  Stokes spoke to Girdich, the Superintendent, as Girdich made

---

[4] When his breakfast was delivered to his cell, Stokes informed McComsey that the coffee cup was dirty and McComsey instructed Stokes multiple times to make his complaint to the mess hall.  Stokes Dep. at 40-42.  Stokes then placed his arm through a slot in his cell door, refusing to remove it until he spoke with a sergeant.  McComsey left the scene and returned with other corrections officers named in the complaint.  Id. at 43-47.

rounds through Stokes' cell block.  Id. at 32.  Strokes complained to Girdich about poor medical treatment, interference with his access to the law library, and the possible service of tampered food products.  Id. 32-34.

   After the incident in April 2003, Stokes filed two grievances.  Id. 56-57.  Stokes failed to mention Goord, Selsky, or Girdich in either grievance.  This motion followed.


## II.  Discussion

   Defendants contend that Stokes has failed to prove (1) an Eighth Amendment claim with regards to his dirty coffee cup and (2) the personal involvement of Goord, Selsky, or Girdich.  Defendants do not appear to seek summary judgment as to Stokes' claim of excessive force and failure to intervene for the March 17, 2003 incident as to McComsey, Richards, or Kramer.


### A. Legal Standard

   A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the

non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.


**B. Eighth Amendment**

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  This "includes the obligation to protect prisoners from harm caused by fellow inmates."  Haywood v. Woods, No. 01-CV-225 (LEK/DEP),

2007 WL 1834641 at *7 (N.D.N.Y. June 25, 2007) (citations omitted).  "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Farmer v. Brennan, 511 U.S. 825, 832 (1970); see also Johnson v. Smith, No. 03-CV-1050 (FJS/DEP), 2006 WL 1843292, at *8 (N.D.N.Y. June 29, 2006). As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test."  Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted).  Thus, "[c]onditions of confinement only constitute an Eighth Amendment violation if they involve the deprivation of a single identifiable human need or denial of the minimum civilized measure of life's necessities, and the defendants' state of mind was one of deliberate indifference to that deprivation."  Johnson, 2006 WL 1843292, at *9 (citations omitted).

The objective prong can be satisfied by

> conditions of confinement . . . [which] in combination [constitute an Eighth Amendment violation] when each would not do so alone . . . [such as] when the conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets.

Davidson v. Murray, 371 F. Supp. 2d 361, 370 (W.D.N.Y. 2005) (citations omitted). However, "[n]othing so amorphous as overall conditions can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."  Id. (citing Wilson v. Seiter, 501 U.S. 294, 304-05 (1991)).  The subjective prong requires "a prison official [to] have a sufficiently culpable state of mind . . ., of deliberate indifference to inmate health or safety"  Farmer, 511 U.S. at 834 (citations omitted).

6

Stokes contends that the dirty cup he was provided on the single occasion suffices to establish an Eighth Amendment violation.  However, as a general proposition, "complaints about . . . dirty dishes . . . at best, suggest negligence rather than a wanton and obdurate disregard for inmate health and safety."  Legler v. Bruce, No. 06-CV-3311 (SAC), 2007 WL 4241845, at *4 (D.Kan Nov. 17, 2007) (internal quotations and citations omitted); Turner v. Plageman, 418 F. Supp. 132, 133-34 (W.D. Va. 1976) (granting summary judgment for defendants because complaints of occasional dirty cups in prison are typical of incarceration).  Additionally, Stokes has failed to proffer any facts indicating how this single instance, which he did not use, rises to the level of a substantial risk of serious harm or denial of an identifiable human need.  See Legler, 2007 WL 4241845, at *4 ("Plaintiff still fails to allege facts indicating how [stained linens, dirty dishes, or inadequate food] . . . created an unconstitutionally high exposure to illness or injury or that he or other . . . inmates became ill . . . .").

Accordingly, defendants' motion for summary judgment as to the claim regarding the dirty cup should be granted.

## C. Personal Involvement

Defendants contend that Stokes has failed to establish supervisory liability for certain of the defendants.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus,

7

supervisory officials may not be held liable merely because they held a position of authority.

Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may

be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319,

323-24 (2d Cir. 1986)).


### 1. Goord

Stokes claims that he sent Goord, the Commissioner of DOCS, two complaints in 2002

concerning the possible tampering of his food, to which Goord issued no reply.  Second

Am. Compl.  Failing to "receive a response to a complaint . . . is insufficient to establish

personal involvement[, especially when] there is no other showing that [defendant] knew of

or directly participated in any alleged violation."  Abbas v. Senkowski, No. 03-CV-476

(GLS/DRH), 2005 WL 2179426, at *2 (N.D.N.Y. Sept. 9, 2005).

Furthermore, Goord cannot be held liable solely because he held a supervisory position

over other defendants.  Goord's actions of delegating to other appropriate DOCS

employees the responsibility for responding to letters from inmates is insufficient to

8

establish awareness or personal involvement.  See Amaker v. Goord, No. 98-CV-3634, 2002 WL 523371, at *16 (S.D.N.Y. Mar. 29, 2002) (finding that letters which were sent to the Commissioner and then delegated to other officials for resolution was insufficient to establish personal involvement by the Commissioner).

Additionally, Stokes does not specifically contend that Goord was directly involved or had knowledge of the alleged constitutional violations.  Stokes admits that he never spoke with Goord, received any correspondence from him, or included his name in the grievances he filed.  Stokes Dep. at 9-10, 22, 24, 26.  Moreover, these grievances were sent over one year before the March 17, 2003 incident.  Id. at 22, 29-30.  These facts all support defendants' arguments that Goord lacked the requisite personal involvement.  However, even when reading the second amended complaint in the light most favorable to Stokes, any liberally construed allegations of direct involvement and knowledge still lack any factual basis.  Also, there is no fact asserted beyond Stokes' conclusory allegations that Goord created a hiring or retention policy which allowed constitutional violations to continue or was grossly negligent in managing the other named defendants.

Therefore, defendants' motion as to Goord should be granted on this ground.


### 2. Selsky & Girdich

A position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement.  Thus, Selsky, the Director of Special Housing, and Girdich, the facility Superintendent, cannot be held liable solely because they held supervisory positions over other defendants.  Stokes does not contend that either defendant was directly involved or had knowledge of the alleged constitutional violations.  In

9

fact, Stokes claims that the only reason he named Selsky as a defendant was because Selsky signed a letter responding to Stokes' complaints of food tampering and the only information he ever conveyed to Girdich concerned medical appointments, access to the law library, and inadequate food.  Stokes Dep. at 26-27, 31-34.

These complaints all occurred and were unrelated to the excessive force incident which is the underlying basis of the current claim.  Therefore, Selsky and Girdich were never apprised of Stokes' fears of physical assault or abuse as Stokes' claims never indicated any such threats existed.  However, even when construing the second amended complaint in the light most favorable to Stokes, any allegations of direct involvement and knowledge still lack any factual basis.  Furthermore, there are no facts asserted beyond Stokes' conclusory allegations that either Selsky or Girdich created a hiring or retention policy which allowed constitutional violations to continue or was grossly negligent in managing other defendants.

Accordingly, defendants' motion with respect to Selsky and Girdich should be granted on this ground.

### III. Wright

Defendant Wright was added to the case in the second amended complaint filed on April 30, 2007.  Docket No. 91.  A summons was issued for Wright on February 12, 2008 and, in light of Stokes' in forma pauperis status, the summons was forwarded to the United States Marshals Service for completion of service on Wright.  Docket No. 104.  Service could not be completed at the address provided by Stokes.  Docket No. 117.  Thus, Wright has neither been served with process or otherwise appeared in this action.

Fed. R. Civ. P. 4(m) requires that a complaint be served upon a defendant within 120

10

days after the complaint is filed or the complaint may be dismissed as to any unserved

defendant without prejudice.  See also N.D.N.Y.L.R. 4.1(b).  More than 120 days have since

passed.  Accordingly, it is recommended that the second amended complaint be dismissed

as to Wright without prejudice pursuant to Rule 4(m) and Local Rule 4.1(b).


### IV.  Conclusion

   For the reasons stated above, it is hereby **RECOMMENDED** that:

   1. Defendants' motion for summary judgment (Docket No. 120) be **GRANTED** and

that:

      A. Defendants be granted judgment as to the Eighth Amendment claim regarding

the dirty cup; and

      B. Judgment be entered in favor of defendants Goord, Selsky, and Girdich and

that they be terminated from the action; and

   2. Defendant Wright be **DISMISSED** from this action without prejudice.[5]

   Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

------------------------

   [5]If the recommendations herein are accepted, what will remain for trial is Stokes'
Eighth Amendment claim of excessive force on March 17, 2003 against defendants
McComsey, Richards, and Kramer.

**REVIEW.**  <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  January 26, 2009
        Albany, New York

_____
United States Magistrate Judge

12